UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAMIE ROCHA,<br><br>             Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | Case No. 1:21-cv-00535-CDB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY**<br><br>(Docs. 18, 24) |

Plaintiff Mamie Rocha ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Social Security benefits pursuant to Title XVI of the Social Security Act. (Doc. 1.) The matter is before the Court on the certified administrative record (Doc. 12) and the parties' briefs, which were submitted without oral argument. (Docs. 18, 24).[1]

Plaintiff asserts the Administrative Law Judge ("ALJ") failed to properly consider a period of Plaintiff's sobriety, ignored evidence favorable to Plaintiff and offered no clear or convincing reason for rejecting a third-party statement of functioning rendered during Plaintiff's period of sobriety. (Doc. 18 at 11-15). Plaintiff requests the decision of the Commissioner be vacated and the case be remanded for further proceedings and proper evaluation of the evidence.

---

[1] Both parties have consented to the jurisdiction of a magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 11).

*Id*. at 15.

# BACKGROUND

Plaintiff filed an application for supplemental social security income on October 20, 2015. (AR 283-291). Plaintiff's application alleged a period of disability beginning October 13, 2013. The application was initially denied on April 12, 2016, and upon reconsideration on July 13, 2016. Following this second denial, Plaintiff filed a written request for a hearing on August 25, 2016. (AR 185).

The ALJ held a video hearing on June 20, 2018. (AR 29, 62 *et seq.*). Plaintiff did not appear and could not be located; instead, Plaintiff's representative appeared on her behalf. *Id*. Plaintiff's sister, Lucy Ortiz ("Ortiz") and an impartial vocational expert ("VE") both testified during that hearing. (AR 66-85). Thereafter, the ALJ issued an order to show cause since Plaintiff did not appear. (AR 242). Plaintiff responded that she missed the hearing because she began using new prescription medications which made her "extremely drowsy." (AR 246). The ALJ found good cause for Plaintiff's failure to appear. (AR 29). The ALJ convened a supplemental hearing on October 2, 2018. (AR 53). Plaintiff did not appear for this supplemental hearing either and could not be located. Plaintiff's representative and a different VE both appeared during this second hearing. Plaintiff waived her right to a personal appearance on October 8, 2018. (AR 269). Plaintiff cited "severe mental health episodes" and stated that she tried to attend on two separate occasions but could not sit in the waiting room for any length of time. (AR 279, 442).

The ALJ issued her decision on December 4, 2018. (AR 46).[2] The ALJ acknowledged that Plaintiff previously received an adverse decision on December 20, 2013, but pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), the ALJ found that new and material evidence became available since the date of the earlier administrative decision. (AR 29).

The ALJ's decision sets out the applicable law including the sequential evaluation process governing her decision to find a disability. (AR 30-32). The ALJ's decision also set forth the

---

[2] The relevant medical record before the ALJ was reviewed by the Court and will be referenced below as necessary to this Court's decision.

2

following procedure relevant for the issues Plaintiff raises in this case:

> If it is found that the claimant is disabled and there is medical evidence of a substance abuse disorder, the undersigned must determine if the substance abuse disorder is a contributing factor material to the determination of disability.  In making this determination, the undersigned must evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant abstained from substance abuse.  If the remaining limitations would not be disabling, the substance abuse disorder is a contributing factor material to the determination of disability [ 20 C.F.R. § 416.935] If so, the claimant is not disabled. (AR 32).

The ALJ's five-step determination process yielded the following findings— at step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since her application date.  At step two, the ALJ found that Plaintiff had degenerative disc disease of the lumbar spine; schizophrenia; bipolar I disorder; and polysubstance abuse with physiological dependance as severe impairments under 20 C.F.R. § 416.920(c).  The ALJ found that Plaintiff's medically determinable impairments (MDIs) of chronic liver disease, epilepsy, and migraine headaches did not cause a limitation or restriction that had more than a minimal effect on Plaintiff's capacity to do basic work activities and were therefore non-severe. (AR 32).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment under 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)).  The ALJ found that although one of Plaintiff's MDIs is severe, the record did not establish that the MDI either "singly or in combination" with other impairments meets or equals the severity requirements of listing 1.04 (disorders of the spine), 12.03 (schizophrenic, paranoid or other psychotic disorders), 12.04 (depressive, bipolar and related disorders), or any other listed impairment. (AR 33).

In addition, the ALJ considered the "paragraph B" criteria under 20 C.F.R., Part 404, Subpart P, Appendix 1.³  The ALJ found that Plaintiff had a moderate limitation in all the areas

---

³ The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  *Id*. To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  *Id.*

3

of mental functioning which are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (AR 33) (citing AR 373-387, 332-336). The ALJ noted these findings were consistent with record evidence, including that Plaintiff lives independently in an apartment but is approved for home care support for food preparation, shopping, cleaning, that she self-reported performing some abilities of daily living, regular interaction with others, and could engage in some multi-step activities such as using public transportation and counting change. (AR 372-387, 330-338).

The ALJ also considered whether the "paragraph C" criteria were satisfied.[4] She found that the evidence failed to establish the presence of the paragraph C criteria as there is no medically documented history of a "serious and persistent" mental disorder of at least two years' duration with evidence of medical treatment. (AR 33). The ALJ found Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the effects of substance abuse, the claimant has the residual functional capacity to perform work as follows: She can lift, carry, push, and/or pull 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday, with normal breaks. The claimant can frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds. She can frequently balance stoop, crouch, or crawl. The claimant must avoid concentrated exposure to hot and cold temperature extremes; flashing lights; vibrations; and dust, odors, fumes, gases, and other pulmonary irritants. She must avoid all exposure to hazards, such as unprotected heights and moving machinery. The claimant can tolerate moderate noise level intensity in the work environment. She is unable to maintain attention and concentration to carry out simple instructions. The claimant is unable to handle funds. She is unable to relate to the general public or interact with supervisors or coworkers. (AR 34).

The ALJ discussed the effects of Plaintiff's substance abuse in detail. The ALJ noted that at the time of her application, Plaintiff alleged that she was limited in her ability to work due to

---

[4] To satisfy the "paragraph C" criteria, there must be a medically documented history of the existence of the mental disorder in the listing category over a period of at least two years and there must be evidence of both: (1) medical treatment, mental health therapy, psychosocial support (s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (2) marginal adjustment, that is, minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

recurrent seizures, schizophrenia, bipolar disorder, depression, and anxiety. (AR 34) (citing AR 323). Plaintiff was receiving treatment from her primary care physician ("PCP"), nurse practitioner, a licensed vocational nurse, as well as a marriage and family therapist. (AR 34) (citing AR 412). Plaintiff was taking various prescription medications including muscle relaxants, anticonvulsants, antipsychotics, and antidepressants (*Id.*) (citing AR 405 and 414).

Plaintiff provided a function report dated November 16, 2015, wherein she stated that she could not work due to paranoia, concentration deficits, and panic attacks. (*Id.*) (citing AR 335). Plaintiff also recounted in the report that she could prepare basic meals, clean, use public transportation and count change. (*Id.*) (citing AR 332-35).

Plaintiff's sister, Lucy Ortiz, testified during the June 20, 2018, hearing. (AR 35) (citing AR 74-84). She testified that Plaintiff could not work due to her mental health issues and experiences auditory hallucinations and talks to herself. (AR 80). Ms. Ortiz further testified that she is the legal guardian for Plaintiff's three children and acts as her caregiver. (AR 84). Ms. Ortiz reported that she helps Plaintiff maintain her hygiene and complete household chores. (AR 76).

The ALJ acknowledged a function report drafted by Tamara Adams, Plaintiff's case manager, who explained that at the time she had known Plaintiff for 14 months. (AR 35, 345). Ms. Adams reported that Plaintiff's symptoms caused difficulties with memory, task completion, concentration, understanding and getting along with others. (AR 350). Ms. Adams corroborated Plaintiff's self-report that she was able to prepare basic meals, launder clothes, take out the garbage, shop for groceries, use public transportation, count change and regularly interact with others. (AR 350).

The ALJ assigned "significant weight" to the statements of Plaintiff's sister and case manager because they were consistent with Plaintiff's allegations regarding her symptoms, limitations with substance abuse, and the medical evidence on the record. (AR 35) (citing AR 493, 521, 697, 786-88, 1239,1241).

The ALJ considered Plaintiff's medical records from the Exodus Recovery Crisis Stabilization Center ("Exodus") which cover the period from between January 18, 2014, through

January 18, 2018. (AR 35). The records provide longitudinal documentation for Plaintiff's treatment for psychosis, mood disorders, and polysubstance abuse. (AR 507-533, 886-99). The ALJ noted that on January 18, 2014, Plaintiff admitted to recent methamphetamine abuse during one of her visits to Exodus. (AR 36, 528). Thereafter, on November 11, 2014, Plaintiff again presented to Exodus. (AR 521-524). During that visit, Plaintiff exhibited bizarre behavior and reacted to internal stimuli; however, a mental status examination displayed unremarkable results. (AR 521). Plaintiff was diagnosed with a psychotic disorder and polysubstance abuse. (AR 524).

The ALJ further noted that between January 19, 2014, and April 16, 2018, Plaintiff saw various clinicians affiliated with the Community Regional Medical Center ("CRMC") for treatment of seizure disorder, mood disorders, and polysubstance abuse. *Id*. Among other things, the ALJ acknowledged (*see* AR 36) that Plaintiff received inpatient treatment at CRMC between January 19, 2014, and January 22, 2014, where she presented with symptoms of severe depression and reported psychosis. (AR 492-496). The providers noted that Plaintiff had recently used methamphetamine and a mental status examination returned positive for paranoia and delusions. (AR 492, 493). A resident physician noted that Plaintiff's psychotic episodes were likely exacerbated by her chronic misuse of illicit substances. (AR 493-494).

Plaintiff also presented to Turning Point of Central California for treatment of polysubstance dependence with comorbid psychosis, depression, and anxiety from between February 7, 2014, through February 19, 2018. (AR 35) (citing AR 594-773, 782-824, 900-66). In addition, between February 19, 2014, and August 2, 2017, Plaintiff saw primary care physician William Garnica, M.D., at the Family Medicine Health Center for treatment of low back pain, schizophrenia, and depression. (*Id*.) (citing AR 833-54, 863-85).

Plaintiff also saw providers from between November 10, 2014, through October 11, 2016, at St. Agnes Medical Center. (AR 36) (citing 534-93, 992-1132). For instance, on June 18, 2015, Plaintiff returned to the Emergency Department at St. Agnes Medical Center and reported allergic reactions and confirmed her regular use of cannabis. (AR 36) (citing AR 539-569). Plaintiff also presented to the Kaweah Delta Mental Health Hospital between November 11, 2014, and November 14, 2014, for the treatment of psychosis and polysubstance abuse. (*Id*.) (citing 445-87,

1207-1231).

Plaintiff was seen by nurse practitioner Nanilee Pimphan, RN, at Turning Point on April 14, 2015. (AR 695-698). Plaintiff self-reported an urge to use methamphetamine and Ms. Pimphan documented Plaintiff's non-compliance with psychotropic medications. (AR 696). A mental status examination revealed that Plaintiff had a depressed mood with tearful affect. Plaintiff also exhibited paranoid delusions and hallucinations. Plaintiff was found to have poor cognition and impaired judgment. (AR 697). Ms. Pimphan's treatment notes listed "Polysubstance Dependence – Unspecified" as a secondary clinical disorder and indicated Plaintiff was "[e]ncouraged not to drink alcohol or use illicit substances." (AR 698).

Plaintiff returned to Ms. Pimphan approximately six months later (on October 6, 2015) and reported experiencing auditory hallucinations and racing thoughts. (AR 613-616). Plaintiff's mental status examination was notable for paranoia, hallucinations, poor cognition, and impaired judgment. Ms. Pimphan's treatment notes stated Plaintiff "is still drinking etoh [alcohol]." Plaintiff was diagnosed with bipolar I disorder and polysubstance dependence. (AR 615). Once again, Ms. Pimphan encouraged Plaintiff "not to drink alcohol or use illicit drugs." (AR 616).

Several months later (on January 26, 2016), Plaintiff was seen for an assessment at Turning Point by Courtney Babcock, MFTI, MS. (AR 782-796). Plaintiff presented with complaints of depression and psychosis and again endorsed regular substance abuse. (AR 37) (citing AR 789). Plaintiff's mental health examination revealed a depressed and anxious mood, illogical thought processes, and poor attention. (AR 786-789). Ms. Babcock concluded Plaintiff met criteria for "Polysubstance Dependence, Continuous," given her regular engagement in substance abuse, "regardless of recommendation to discontinue." (AR 789).

On April 24, 2018, Plaintiff was seen by Dr. Peter Burns at Community Mental Health Center. (AR 1241-1242). Plaintiff complained of auditory hallucinations, anxiousness, and insomnia. Dr. Burns attributed these symptoms in part as being "complicated by continued daily cannabis use, and a history of methamphetamine use." (AR 1241). Plaintiff was found to have an anxious mood, blunt affect, as well as impaired insight and judgment. *Id*.

Plaintiff returned to Dr. Burns on June 1, 2018. (AR 1239-1240). Plaintiff reported mood

7

instability and irritability but her mental health examination was unremarkable. Plaintiff was found to have impaired insight and judgment due to her continued drug use and medication noncompliance. Plaintiff told Dr. Burns that "if she could use cannabis daily she would." (AR 1239).

Considering Plaintiff's circumstances as elicited through hearing testimony and medical records, her RFC and impairments (including her substance abuse disorder), the ALJ found that there are no jobs in the national economy that Plaintiff could perform. (AR 41-42). Having found that Plaintiff's disabling conditions included substance abuse disorder, the ALJ conducted the five-step inquiry a second time, separating out the impact of the substance abuse to determine whether it was a contributing factor material to the disability determination.

At step two, the ALJ found that if Plaintiff abstained from substance abuse, she would still have the severe impairments of degenerative disc disease of the lumbar spine, schizophrenia, and bipolar I disorder. However, the ALJ also found were Plaintiff to abstain from substance abuse, neither her physical nor mental limitations would meet the criteria of listings 12.03 or 12.04. (AR 42). Further, the ALJ found Plaintiff would continue to have moderate restrictions under the Paragraph B criteria were she to abstain from illicit substances. (AR 42).

The ALJ then assigned the following RFC based on her assessment of the degree of limitations she found:

> Without the substance abuse disorders, the claimant has the residual functional capacity to perform work as follows: She can lift, carry, push, and/or pull 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday, with normal breaks. The claimant can frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds. She can frequently balance, stoop, crouch, or crawl. The claimant must avoid concentrated exposure to hot and cold temperature extremes; flashing lights; vibrations; and dust, odors, fumes, gases, and other pulmonary irritants. She must avoid all exposure to hazards, such as unprotected heights and moving machinery. The claimant can tolerate moderate noise level intensity in the work environment. She would be limited to the performance or unskilled work involving simple repetitive tasks. The claimant could have no more than occasional brief superficial contact with the public, supervisors, and coworkers.

(AR 43). The ALJ acknowledged Ms. Ortiz and Ms. Adams's statements that Plaintiff would

8

have functional limitations related to her seizures, schizophrenia, bipolar disorder, depression, and anxiety even if she abstained from polysubstance abuse.  (AR 44) (citing AR 323, 310-13, 344-52, 405, 406, 415-19).

Without consideration of substance abuse, the ALJ found that while the record contained mental status examinations corresponding to possible complete or partial sobriety, medical records indicated that Plaintiff's psychotic episodes were exacerbated by her chronic abuse of illicit substances. (AR 44) (citing AR 493-94).  In the report of psychiatric evaluation cited by the ALJ, the resident psychiatrist (Matthew Binoj, M.D.) noted during his January 2014 evaluation that Plaintiff had recently used methamphetamine and also was positive in the past for opioids and cannabis.  Dr. Binoj noted that Plaintiff's mental health conditions and symptoms were taken "in the context of ongoing and recent methamphetamine use."  (AR 493).  Dr. Binoj further characterized Plaintiff's substance abuse as a "confounding variable" to her history of psychosis and explained that "chronic misuse" of substances "worsen the course of psychosis resulting in more frequent acute psychotic episodes *which is demonstrated in this case*."  (AR 494) (emphasis added).

The ALJ also relied on a psychiatric progress note from Ms. Babcock during her evaluation of Plaintiff in January 2016 (approximately two years after Dr. Binoj's assessment, noted above) during which Plaintiff continued to be diagnosed with polysubstance dependance as well as psychoactive substance dependence. (AR 793). The ALJ further relied on Dr. Burns' assessment in June 2018 that Plaintiff's impaired insight and judgment was in part "due to her continued drug use and medication noncompliance."  (AR 44) (citing AR 1237).[5]  The ALJ found that while Plaintiff has pervasive mental health issues, evidence from her providers that "the effect of substance abuse, specifically cannabis as impacting perceptual disturbance, and thus the persistent, persuasive evidence in the record indicates that she would be unable to sustain a regular work week schedule due to substance abuse."  (AR 44) (citing AR 1244-50).

---

[5] The Court notes that Dr. Burns' comment about Plaintiff's insight and judgment comes from a report dated June 1, 2018, and that the comment is annotated with "10/31/13."  Based on the context of the report, however, it is apparent the comment is percipient as it also describes Plaintiff's then-amenability to treatment and is followed by a narrative identified as "previous comments."

9

After considering the testimony of the VE, the ALJ found that if Plaintiff abstained from substance abuse, her circumstances combined with her RFC would permit her to engage in a significant number of jobs in the national economy, including as a scrap sorter, marker, or hand packager. The ALJ concluded that Plaintiff's substance use disorder was a material factor for the finding of disability because she would be found not disabled if she abstained from abusing those substances. Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 45-46).

Plaintiff submitted a request for review by the Appeals Council, which was denied on March 3, 2020. (AR 12). On March 30, 2021, Plaintiff filed a complaint before this court. (Doc. 1).

## LEGAL STANDARD

**A. The Disability Standard**

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a). An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[6] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled. *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

---

[6] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

1   *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

2   on a claimant at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing

3   *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

4         Before making the step four determinations, the ALJ first must determine the claimant's

5   residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  The RFC is the most a claimant

6   can still do despite their limitations and represents an assessment based on all relevant evidence.

7   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's

8   impairments, including those that are not severe.  20 C.F.R. § 416.920(e); § 416.945(a)(2).  *E.g.*,

9   *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in

10  assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's

11  medically determinable impairments, whether severe or not severe.").  The RFC is not a medical

12  opinion.  20 C.F.R. § 404.1527(d)(2).  Rather, it is a legal decision that is expressly reserved to

13  the Commissioner.  20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

14  Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

15  residual functional capacity.").

16        At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform

17  other work in the national economy given the claimant's RFC, age, education, and work

18  experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  To do this, the ALJ can use

19  either the Medical-Vocational Guidelines or rely upon the testimony of a VE.  *Lounsburry v.*

20  *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

21  Cir. 2001).  "Throughout the five-step evaluation, the ALJ 'is responsible for determining

22  credibility, resolving conflicts in medical testimony and for resolving ambiguities.'"  *Ford*, 950

23  F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

24        "A finding of 'disabled' under the five-step inquiry does not automatically qualify a

25  claimant for disability benefits."  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (citing

26  *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)).  When there is evidence of drug or

27  alcohol addiction (DAA), the ALJ must determine whether that addiction is a material factor

28  contributing to the disability.  In other words, the ALJ must evaluate which of the current

physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any and all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations would not be disabling, DAA is a material contributing factor to the determining disability. *Id*. If the remaining limitations would be disabling, the claimant is disabled independent of the DAA and the addiction is not a material contributing factor to the disability. *Id*. Plaintiff bears the burden to establish that her substance abuse was not a contributing factor material to her disability by showing she would have remained disabled even if she ceased abusing illicit substances. *See Parra*, 481 F.3d 742, 748, 750 (9th Cir. 2007) ("inconclusive" evidence as to the effect abstinence would have on persisting disability deemed insufficient to satisfy the claimant's burden of proof under the statute).

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible

to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts the ALJ failed to properly consider a period of Plaintiff's sobriety and ignored evidence favorable to Plaintiff in connection with her determination that Plaintiff's substance abuse materially contributed to her disability. Separately, Plaintiff argues the ALJ offered no clear or convincing reason for rejecting a third-party statement of functioning rendered during Plaintiff's period of sobriety. (Doc. 18 at 11-15).

**A. The ALJ's Materiality Finding is Supported by Substantial Evidence**

The Social Security Act provides that a claimant shall not be considered to be disabled if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled. *See* Social Security Ruling (SSR) 13-2p, 2013 WL 603764 (Feb. 20, 2013) (citing 42 U.S.C. § 423(d)(2)(C)). In making this determination, the ALJ must first conduct the sequential five-step inquiry used to evaluate disability "without separating out the impact of alcoholism or drug addiction." *Bustamante*, 262 F.3d at 955-56. If a claimant is deemed disabled and there is medical evidence of drug addiction or alcoholism, "the ALJ conducts the five-step inquiry a second time, separating out the impact of the DAA, to determine whether DAA is a contributing factor material to the disability determination." *Stephanie M. v. Saul*, No. 20-cv-01711-MMA-BGS, 2022 WL 1037112, at *5 (S.D. Cal. Apr. 6, 2022) (citing *Parra*, 481 F.3d at 747).

"The 'key factor … in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability' is whether an individual would still be found

1  disabled if she stopped using alcohol or drugs." *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998) (quoting 20 C.F.R. § 404.1535(b)(1)). "In making this determination, [the Commissioner] will evaluate which of [the claimant's] current physical and mental limitations ... would remain if [she] stopped using drugs or alcohol and then determine whether any or all of [her] remaining limitations would be disabling." *Id.* (quoting 20 C.F.R. § 404.1535(b)(2)).

Here, Plaintiff does not challenge that the ALJ conducted the required five-step inquiry; rather, Plaintiff's discrete challenge is that the ALJ's conclusion upon completing the analysis – that Plaintiff's DAA *is* a contributing factor material to the disability determination – was "fatally flawed" as it overlooked evidence and otherwise was not supported by substantial evidence. (Doc. 18 at 11).

First, Plaintiff maintains that the ALJ overlooked a period of abstinence. *Id.* at 12. Evidence from a period of abstinence "usually" is the "best evidence" for determining whether physical impairments would improve to the point of nondisability. SSR 13-2p. However, the mere existence of a relevant period of abstinence is not dispositive and does not foreclose a finding that DAA is a contributing factor material to a plaintiff's disability determination.

Here, Plaintiff does not convincingly demonstrate that Plaintiff *in fact* experienced a period of abstinence or that any such period suggests that ALJ's materiality finding was improper. In particular, Plaintiff suggests she abstained from abusing substances between November 2014 and January 2016 (Doc. 18 at 12). However, during this same time period, Plaintiff acknowledges three "brief relapses" of methamphetamine use and that, at the end of the purported period of abstinence in January 2016, a treating physician diagnosed Plaintiff with "cannabis dependence." *See* Doc. 18 at 13 (citing, *inter alia*, AR 664, 671, 1164). Plaintiff further argues that records from Turning Point during this same period corroborate persistence of symptoms despite abstinence (*id.*), but again, she acknowledges these same records reflect the Plaintiff's self-report of use of alcohol and cannabis at least three times per week. This is a far cry from abstinence. The Court concludes, based on the evidence she relies upon, that Plaintiff has failed to carry her burden to establish that her DAA is not a contributing factor material to her mental impairments and disability. *Parra*, 481 F.3d at 748-49.

The ALJ's conclusion that Plaintiff's substance use disorder was a material factor for the finding of disability because she would be found not disabled if she abstained from abusing those substances is supported by substantial evidence. The medical records of Plaintiff's treatment at Exodus, CRMC, Turning Point, and other facilities and by other providers throughout the entire duration of her claimed disability – which the ALJ reviewed and relied upon – demonstrate persistent and uninterrupted polysubstance abuse. For instance, the ALJ acknowledged that a resident physician in January 2014 noted Plaintiff's psychotic episodes were likely exacerbated by her chronic misuse of illicit substances. (AR 44) (citing 493-494). In particular, that attending physician characterized Plaintiff's substance abuse as a "confounding variable" to her history of psychosis and explained that "chronic misuse" of substances "worsen the course of psychosis resulting in more frequent acute psychotic episodes *which is demonstrated in this case*." (AR 494) (emphasis added).

Separately, throughout her visits and care at Turning Point, the ALJ observed that reports from therapeutic staff consistently documented Plaintiff's symptoms of psychosis coupled with her continued abuse of illicit substances. Further, the ALJ acknowledged that, in April 2018, an attending physician reported Plaintiff complained of auditory hallucinations, anxiousness, and insomnia – symptoms he attributed in part as being "complicated by continued daily cannabis use, and a history of methamphetamine use." (AR 44) (citing AR 1241-42).

In short, the ALJ properly relied upon sufficient medical records in evidence to conclude that Plaintiff would not be disable if she stopped abusing illicit substances.

**B. The ALJ Properly Cited Germane Reasons for Discounting Lay Testimony**

Plaintiff next asserts that the ALJ's analysis of statements from her case manager (Ms. Adams) was erroneous. (Doc. 18 at 15). In particular, although the ALJ credited Ms. Adams' statements in some regards, she found her statements that Plaintiff would still experience functional limitations attendant her psychotic diagnoses – even if she abstained from substance abuse – to be inconsistent with other evidence suggesting the contrary. (AR 35, 44). However, an ALJ need only give germane reasons for rejecting lay witness testimony. *Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005). *See Molina v. Astrue,* 674 F.3d 1104, 1117 (9th Cir. 2012)

(ALJ not required to discuss every witness's testimony and need only to give germane reasons for rejecting similar testimony); *Cheyanne J. v. Kijakazi*, No. 1:20-cv-03238-SMJ, 620 F. Supp.3d 1114, 1124 (E.D. Wash. 2022) ("germane standard" applies where ALJ rejects case manager opinion testimony).

The ALJ found that Ms. Adams' statements were not consistent with the medical evidence (recounted above) which indicated Plaintiff's substance abuse was a "confounding variable" in her disability diagnoses and that her symptoms were attributable in part as being "complicated" by her persistent abuse of illicit substances. (AR 44). The Court finds this evidence, cited by the ALJ, constitutes "germane reasons" for discounting Ms. Adams' statements.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence and proper analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment appealing the decision of the Commissioner of Social Security (Doc. 18) is DENIED and the decision of the Commissioner of Social Security is AFFIRMED.
2. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Mamie Rocha, and to close this case.

IT IS SO ORDERED.

Dated:   **November 27, 2023**                    _____
                                                                   UNITED STATES MAGISTRATE JUDGE